## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Diva D. Ross, individually and on behalf of all others similarly situated and on behalf of the general public,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>QTC Commercial Services, LLC, d/b/a IMX Medical Management Services,<br><br>　　　　　　Defendant. | Case No.: 2:23-cv-03214 |
| Trevis Bravener, individually and on behalf of all others similarly situated and on behalf of the general public,<br><br>Plaintiff,<br>v.<br><br>QTC Commercial Services, LLC, d/b/a IMX Medical Management Services,<br><br>Defendant. | Case No.: 2:23-cv-03598 |

## PLAINTIFFS' MOTION TO CONSOLIDATE
## CASES AND APPOINT INTERIM CLASS COUNSEL

## I.    INTRODUCTION

Plaintiffs Diva Ross and Trevis Bravener (collectively "Plaintiffs") are the Plaintiffs in the above-captioned first- and second-filed actions that relate to the same data breach. They respectfully move this Court for an order (1) consolidating *Ross v. QTC Commercial Services, LLC, d/b/a IMX Medical Management Services*,  No. 2:23-cv-03215 (E.D. Pa.) and *Bravener v. QTC Commercial Services, LLC, d/b/a IMX Medical Management Services*, No. 2:23-cv-03598

(E.D. Pa.) (collectively the "Related Actions"), pursuant to Fed R. Civ. P. 42(a), as well as any future related actions that may be filed in this Court, under the docket of the first-filed *Ross* action (No. 2:23-cv-03214) and under the new caption "*In re QTC Commercial Services, LLC, d/b/a IMX Medical Management Services Data Breach Litigation*"; and (2) appointing William B. Federman of Federman & Sherwood and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") as interim co-lead class counsel and Randi Kassan of ("Milberg") as interim liaison counsel (collectively, "Proposed Interim Class Counsel") pursuant to Fed. R. Civ. P. 23(g). This motion is being filed in both actions.

Consolidation of the Related Action is appropriate because they arise from the same nucleus of operative facts—a data breach at QTC Commercial Services, LLC, d/b/a IMX Medical Management Services ("IMX") that exposed the private and confidential information of nearly 7,594 unwitting individuals—and assert similar and overlapping causes of action on behalf of similar and overlapping classes, seeking the same relief.

Appointing interim class counsel here is appropriate because, as described below, another duplicative action has been filed in this Court, and it is likely additional cases may be filed. Appointment of interim co-lead class counsel will clarify the roles and responsibilities of counsel on behalf of the class, while avoiding duplicative and unnecessary litigation that could result in inefficiencies for the Court and the Parties. Appointment of interim liaison counsel will allow for more efficient and direct communication in this case. The interim class counsel will also allow the parties to move the case forward in an efficient manner.

## II.    BACKGROUND

Defendant IMX is a fictitious name, owned and operated by QTC Commercial Services, LLC ("QTC"). QTC is a Virginia corporation with its principal place of business in Malvern, PA. IMX provides medical evaluation and review services to insurance carriers, third-party administrators, employers, law firms, and other businesses. In the ordinary course of conducting its business, IMX gathered and maintained certain categories of information from Plaintiffs and putative class members across the U.S. in exchange for providing accreditation to the nursing programs that Plaintiffs and putative class members attended.

On September 1, 2022, IMX discovered that some of its systems containing confidential and personal information had been accessed without authorization for a period between June 2022 and October 2022 (the "Data Breach"). During the Data Breach, one or more unauthorized third parties accessed Class Members' sensitive data including, but not limited to, Social Security numbers and Medical Information. According to the Data Breach Notification, which Defendant filed with the Office of the Maine Attorney General, 7,594 persons were affected by the Data Breach.[1] While Defendant claims to have discovered the breach as early as September 1, 2022, Defendant did not begin informing victims of the Data Breach until July 2023. Indeed, Plaintiffs and Class Members were wholly unaware of the Data Breach until they received letters from Defendant informing them of it on or around July 28, 2023. This is an unforgiveable amount of time to delay in giving notice of the data breach. Plaintiffs allege they suffered various injuries as a result of IMX's failure to safeguard the sensitive protected identifying information and private health information entrusted to it.

---

[1] https://apps.web.maine.gov/online/aeviewer/ME/40/7407c47b-6295-432a-a7f8-54afc0133477.shtml.

To date, there have been two consumer class actions filed in this Court related to the Data Breach. Counsel in these Related Actions acted promptly to coordinate their efforts and to move the cases forward efficiently. Counsel now seek to consolidate these actions and move for the appointment of interim lead class counsel and interim liaison counsel to streamline the efficient prosecution of this litigation.

## III.    ARGUMENT

### A.    The Related Actions Should be Consolidated Under Rule 42(a)

Rule 42(a) of the Federal Rules of Civil Procedure authorizes the consolidation of cases sharing common questions of law or fact. Whether to do so is left to the trial court's discretion. *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014).

Rule 42(a) of the Federal Rules of Civil Procedure provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a). In determining whether consolidation is appropriate, the court must also "weight the benefits of judicial economy against the potential for new delays, expense, confusion or prejudice." *Volkay v. Court of Common Pleas of Allegheny Cty.*, 2015 WL 4953143, at *1 (W.D. Pa. Aug. 19, 2015).

### 1.    Common Questions of Law and Fact Predominate

The Complaints in each of the Related Actions assert common causes of action against a common defendant (IMX) in response to the same alleged misconduct (IMX's failure to adequately safeguard personal information). The Related Actions commonly seek certification of similar classes and allege that class members suffered similar harms as a result of IMX's conduct.

Consolidation of the Related Actions is warranted because it will simplify discovery, pretrial motions, class certification issues, and other case management issues, especially because the Related Actions are at their procedural inception. Consolidating the Related Actions will also reduce the confusion and delay that may result from prosecuting related putative class actions separately, including eliminating duplicative discovery and the possibility of inconsistent rulings on class certification, *Daubert* motions, and other pretrial matters. Furthermore, consolidation will foster judicial economy and will not prejudice any party.

Courts consistently find that data privacy cases are particularly appropriate for Rule 42 consolidation. *See, e.g.*, *Meyers v. Onix Group, LLC*, 2023 WL 4630674 (E.D. Penn., July 19, 2023); *McDonald v. PaperlessPay Corp.*, No. 3:20-CV-1005-MMH-MCR, 2021 WL 931599, at *3 (M.D. Fla. Mar. 11, 2021) (court ordered consolidation of data breach cases because even though there were "slight distinctions in proposed class definitions and specific causes of action" the cases concerned the same data breach, which resulted in generally the same type of harm, to the same broad category of putative class members).

### 2. The Cases Face the Risk of Inconsistent Adjudications

Courts may consolidate cases to avoid the risk of duplicative actions. *Gonzalez v. Owens Corning*, 2013 WL 5436963, at *3–4 (W.D. Pa. Sept. 27, 2013). The Related Actions concern the same data breach. Both allege the same claims, including negligence, negligence per se, invasion of privacy, breach of implied contract, breach of confidence, breach of fiduciary duty, and declaratory judgment. Additionally, both lawsuits seek certification of the same classes. Absent consolidation, it is possible multiple overlapping classes could be certified which may lead to

Defendants being responsible for more than one judgment for the same class. The potential risk of prejudice and possible confusion is far outweighed by the risk of inconsistent adjudications.

Moreover, all of the cases before this Court have the same procedural posture where the Complaints have been filed, but IMX has not yet responded. This is not a case where consolidation will result in the delay of an otherwise trial-ready action. *Beloit v. Killion & Sons Well Service, Inc.*, No. 16-362, 2016 WL 4539624, at *2 (W.D. Penn., Aug. 31, 2016) (Not Reported in Fed. Supp.) Plaintiffs and Defendants will experience very little prejudice, if any, by consolidating these cases. Therefore, this factor militates in favor of consolidation. *Id.*; *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) (consolidation found appropriate where it would promote judicial economy by streamlining and simplifying pre-trial, discovery and class certification issues, and by reducing waste, confusion, and delay that would result from multiple trials.).

### 3. The Burden Posed by Multiple Lawsuits is Substantial

The burden on the Parties, the witnesses, and judicial resources will be substantially lessened by consolidation. Here, no plaintiff opposes consolidation, which augurs in favor of consolidation. *See Kavra v. Health Ins. Innovations, Inc.*, No. 8:17-CV-2186-T-17MAP, 2017 WL 10295953, at *1 (M.D. Fla. Dec. 28, 2017) ("Here the absence of any objection to motion to consolidate augurs in favor of consolidation."). Consolidation will allow Plaintiffs to jointly prosecute the case, share discovery documents, and avoid the possibility of the Court certifying overlapping classes. The burden of maintaining separate lawsuits will be lessened by consolidation. *Gonzalez*, 2016 WL 5436963, at *3–4.

The undersigned have reached out to Defense counsel regarding this consolidation. While reserving all rights, defenses, and arguments, Defendant does not oppose the motion to

consolidate. Defendant takes no position at this time on the motion to appoint interim class counsel.

Lastly, judicial resources will be conserved by presiding over one consolidated case rather than multiple separate cases. It is likely that other similar cases will follow this one, given the size of the class. As such, consolidating these cases will reduce the number of motions, briefings, hearings, and trials before the Court.

### 4. Litigating Separate Actions Would Require More Time than Litigating a Consolidated Action.

Consolidation of cases is permitted as a matter of convenience and economy, even though consolidation does not merge separate suits into one cause of action. *Nye v. Ingersoll-Rand Co.*, No. 08-3481, 08-4260, 08-5371, 2008 WL 5070692, at *7 (D.N.J. Nov. 24, 2008) (Not Reported in F. Supp. 2d.). Consolidation of similar class actions expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved. *Gonzalez*, 2016 WL 5436963, at *3–4; *see also Leprino Foods Co. v. DCI, Inc.,* No. 13-cv-02430-RM-KMT, 2015 U.S. Dist. LEXIS 2482, at *7-9 (D. Colo. Jan. 9, 2015) (the court found that the two actions involve common questions of law or fact and thus "consolidation of these two actions will avoid unnecessary costs and will promote judicial efficiency").

It is plainly understood that litigating multiple separate causes of actions versus one consolidated action would take substantially more time for the Court and the Parties. Ultimately, the most efficient way to handle the issues in these Related Actions would be to consolidate the cases. *Durigon v. Tortonto-Dominion Bank.*, 2017 WL 6388954, at *3 (D.N.J. Dec. 13, 2017).

### 5.  The Expense of Multiple Trials Supports Consolidation.

Finally, the relative expense to all parties concerned—particularly with regard to discovery—is highly likely to be lessened by litigating in one consolidated case rather than litigating in separate cases. *See Gonzalez*, 2016 WL 5436963, at *3–4.

### 6.  Conclusion

Thus, Plaintiffs Ross and Bravener respectfully request that the Court consolidate the Related Actions under the docket number of the first filed case, 2:23-cv-03214, and under the title *In re QTC Commercial Services, LLC d/b/a IMX Medical Management Services Data Breach Litigation*.

### B.    The Court Should Appoint Interim Class Counsel Pursuant to Rule 23(g)

Pursuant to Rule 23(g), a court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *Milkboy Center City, LLC v. Cincinnati Casualty Company*, No. 20-20236, No. 20-2614, 2020 WL 7633975, at *3 (E.D. Penn., Dec. 22, 2020). Designation of interim counsel prior to class certification is appropriate because certain conduct and filings, such as discovery, discussion of settlement, or motion practice, are typically required prepare for the certification decision. Fed. R. Civ. P. 23 Advisory Committee Notes (2003).

Early class counsel appointments are particularly important where, as here, other cases have been and will continue to be filed by other counsel, including in other courts. *See, e.g. Othart Dairy Farms, LLC v. Dairy Farmers of Am., Inc.*, No. 22-cv-0251 MIS/SMV, 2022 U.S. Dist.

LEXIS 133270, at *9 (D.N.M. July 27, 2022) ("Such appointment is warranted where there are multiple overlapping cases, 'rivalry [amongst counsel,] or uncertainty that makes formal designation of interim counsel appropriate.'"); *Gamboa v. Ford Motor Co*., 381 F. Supp. 3d 853, 867 (E.D. Mich. 2019)); *Beture v. Samsung Elecs. Am., Inc.,* No. 17-5757 (SRC), 2018 U.S. Dist. LEXIS 50413, at *3 (D.N.J. Mar. 27, 2018) ("This Court is persuaded that it is in the interest of the putative class of Plaintiffs to prevent a competition between counsel, and to encourage the coordination and cooperation of counsel by granting this motion."). "In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* (citing *Manual for Complex Litigation* (4th) § 21.11).

Thus, appointing co-lead counsel now will "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual § 21.11; *see, e.g.*, *Tolmasoff v. General Motors, LLC*, Case No. 16-11747, 2016 U.S. Dist. LEXIS 85101, at *27 (E.D. Mich. June 30, 2016) (appointing interim class counsel where competing cases "may follow"). This clarity is particularly important in a case, such as this one, where many hundreds of thousands of class members likely have been impacted by the alleged conduct and where numerous cases have been and will continue to be filed.

Courts typically look to the Rule 23(g) factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *Milkboy*, 2020 WL 7633975, at *3. These factors are:

(1)  the work counsel has done in identifying or investigating potential claims in the action;

(2)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(3)  counsel's knowledge of the applicable law; and

(4)  the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

As discussed below, each of the relevant factors demonstrate that proposed interim co-lead class counsel and proposed liaison counsel are highly qualified to represent the interests of the class.

### 1.    Proposed Interim Co-Lead Class Counsel Performed Substantial Work in Investigating this Action

Proposed interim co-lead class counsel has committed substantial, yet appropriate, time and resources to organizing and working toward the advancement of this litigation, investigating and researching the potential legal theories and claims at issue, and researching and reviewing information relating to the factual underpinnings of the Data Breach. Counsel is familiar with the facts and legal issues in this matter and will continue their pursuit of the claims on behalf of Plaintiffs and the class. Federman & Sherwood and Milberg were the first to comprehensively investigate the facts of this matter and commence the prosecution of the cases. Federman & Sherwood and Milberg have devoted substantial time investigating the background facts, drafting a detailed complaint, and coordinating with defense counsel.

Mr. Federman, Mr. Lietz, and their respective firms continue to perform substantial work that has been (and will be) valuable to the class as the case moves forward. This includes but is

not limited to: (a) reviewing consumer communications concerning the Data Breach; (b) engaging in ongoing communications with absent class members; (c) investigating the scope of the Data Breach's consequences, and IMX's public response regarding the same; (d) researching potential claims arising from the Data Breach and defenses thereto; (e) performing sufficient legal research into the causes of actions that can be asserted on behalf of the class; and (f) using this information to prepare a consolidated complaint.

Proposed Interim Class Counsel has conducted all the work necessary to prosecute this litigation thus far, and they stand ready, willing, and able to continue to devote the substantial effort and resources (including the advancement of costs) necessary for advancing the claims of Plaintiffs and the proposed class.

> **2.      Proposed Interim Co-Lead Class Counsel Has Substantial Knowledge About and Is Experienced in Leading and Resolving Data Privacy Class Actions.**

Data privacy cases present unique and novel issues of fact and law that are always evolving. They further require an understanding of the technical issues of data hacking, data privacy measures, and industry standards. Appointing class counsel experienced in data privacy litigation is in the best interest of the class. *Outten v. Wilmington Tr. Corp.,* 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel.").

**William B. Federman, Federman & Sherwood**

Mr. Federman has extensive experience leading and litigating complex cases, particularly data privacy matters against large corporate defendants such as Brinker International, Inc., Solara Medical Supplies, LLC, MedData, Mednax Services, Inc., and Smile Brands, among others. *See*

Federman & Sherwood Firm Resume, **Exhibit 1**, pp. 6–7. Federman & Sherwood is one of the leading boutique AV rated plaintiff complex litigation law firms in the country. Numerous courts have favorably commented on Federman & Sherwood's and Mr. Federman's abilities in prosecuting complex cases. For instance, he served as co-lead and liaison counsel in *Mobbs, et al. v. Farmers Insurance Co., Inc.*, USDC Western District of Oklahoma (Case No. CV-03-158) (Friot, J.). The Court in that case, in approving a proposed settlement, stated:

> Finally, let me applaud the efforts of counsel to get it litigated—to get it not only litigated but mediated and resolved subject to court approval. It did take a fair amount of work, not only to litigate the matter and do the discovery, do the briefing, and the argument and case management that had to be done, but it took a fair amount of good professional judgment to also get it settled.

> And up until I approved the settlement a few minutes ago, it was a case that presented, in my view, very substantial risk for both sides, and I certainly do applaud the efforts of settlement—the efforts of counsel in crafting the settlement that was reached. Which I, as I have said, am well satisfied is fair, just, and reasonable settlement for the unnamed class members as well as the representative plaintiffs.

Mr. Federman recently served (or is currently serving) in leadership positions in similar data breach cases, including: *Perez, et al. v. Carvin Wilson Software, LLC*, No. 2:23-cv-00792-PHX-SMM (Dist. Ariz.) (ECF No. 8) (interim co-lead class counsel); *Bingaman, et al. v. Avem Health Partners, Inc.*, No. CIV-23-134-SLP (W.D. Okla.) (interim lead counsel and liaison counsel) *Deevers v. Wing Financial Services LLC*, No. 22-CV-0550-CVE-JFJ (N.D. Okla. 2022) (interim co-lead class counsel); *Doughty v. Central Square Technologies, LLC, et al.*, No. CIV-20-500-G (W.D. Okla.) (settlement class counsel); *McPherson v. American Bank Systems, Inc.*, no. CIV-20-1307-G, 2021 WL 932042 (W.D. Okla. 2021) (interim liaison counsel); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, No. 1:22-cv-00591-TNM (D.D.C.) (co-lead counsel);

*Mackey v. Belden, Inc.*, No. 4:21-cv-00149-JAR (E.D. Mo.) (co-lead counsel); *Mednax Services,*

*Inc., Customer Data Security Breach Litigation*, No. 21-MD-02994-RAR, ECF No. 43 (S.D. Fla.

2021) (interim co-lead counsel); *Kolstedt et al. v. TMX Finance Corporate Services, Inc.*, No. 4:23-

cv-76 (S.D. Ga, Savannah Division) (interim plaintiffs' steering committee); *In re: Mednax*

*Services, Inc., Customer Data Security Breach Litigation*, MDL No. 2994 (Co-Lead Counsel); *In*

*re: Anthem, Inc., Customer Data Security Breach Litigation*, MDL No. 2617 (Participating

Counsel); *In re: Equifax, Inc., Customer Data Security Breach Litigation*, MDL No. 2800

(Participating Counsel), and *In re: Premera Blue Cross Customer Data Breach Litigation*, MDL

No. 2633 (Participating Counsel).

Additionally, Federman & Sherwood has thwarted many motions to dismiss filed in data

breach class actions with the same or similar allegations to those alleged herein. *See, e.g., Bowen*

*v. Paxton Media Group, LLC*, No. 5:21-cv-00143-GNS, (W.D. Ky.) (Order dated Sept. 8, 2022)

(Order grating in part and denying in part the defendant's motion to dismiss) (ECF No. 39); *In re:*

*Solara Medical Supplies Data Breach Litigation,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.)

(Order granting in part and denying in part the defendant's motion to dismiss) (ECF No. 42); *In*

*re: Brinker Data Incident Litigation,* No. 3:18-cv-686-J-32MCR (M.D. Fla.) (Order dated July 27,

2020) (ECF No. 122); *Neville McFarlane, et al. v. Altice USA, Inc.*, No. 1:20-cv-01297-JMF

(S.D.N.Y.) (Opinion and order dated Mar. 8, 2021) (ECF No. 58); *Mackey, et al. v. Belden, Inc.*,

No. 4:21-cv-00149-JAR (E.D. Mo.) (Order dated Aug. 3, 2021) (ECF No. 22); *Fischer v.*

*CentralSquare Technologies, LLC*, No. 21-cv-60856-RAR (S.D. Fla) (Order granting in part and

denying in part the defendant's motion to dismiss) (ECF No. 28); *Durgan, et al. v. U-Haul*

*International Incorporated*, No. CV-22-01565-PHX-MTL (D. Az.) (ECF No. 31); and *In re:*

*Mednax Services, Inc., Customer Data Security Breach Litigation*, Case No. 21-MD-02994-RAR (S.D. Fl.) (ECF No. 104).

In addition, Mr. Federman has been appointed and currently serves as a Special Master for the District Court of Oklahoma County (*Access Financial Group, Inc. v. McGuire, et al*., Case No. CJ-2020-2542)(Andrews, J.); was a member of the Arbitration Panel, New York Stock Exchange (1985 – 1995); is a member of the Oklahoma County Bar Association (Member, Committee on Professionalism, 1987-1990); the Oklahoma (Committee on Professional Ethics, 2019-present), Texas, and New York Bar Associations; the American Bar Association (Committee on Securities Litigation and Corporate Counsel); The District of Columbia Bar; the Securities Industry Association (Law and Compliance Division); American Inns of Court (Barrister, 1990-1993); Martindale-Hubble (peer review rating of AV Preeminent in both ethical standards and legal ability); and the Litigation Counsel of America (Trial Lawyer and Appellate Lawyer Honorary Society).

In summary, Federman & Sherwood has served in leadership positions ***in over sixty class actions*** (consumer and financial matters), working with a multitude of law firms across the country and is well-qualified to assist in this case, and has enjoyed great success in doing so.

## David K. Lietz, Milberg

### *David K. Lietz and the Milberg law firm*

David K. Lietz is a 1991 graduate of Georgetown University Law Center, and is currently a partner of the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg").  He has been licensed to practice law in the District of Columbia since 1991, is a member of the bars of numerous federal district and appellate courts, and has decades of litigation and class action

experience. He has represented and is currently representing plaintiffs in more than 100 class action lawsuits in state and federal courts throughout the United States. Both Mr. Lietz and his law firm carry on a national and international class action law practice. With respect to data privacy cases, Mr. Lietz is currently litigating more than 100 cases across the country involving violations of privacy violations, data breaches, and ransomware attacks.

Just in the past 3 years, Mr. Lietz (either individually or as a member of his law firms) has been appointed class counsel in no less than 40 data breach or data privacy cases that have been either preliminarily or finally approved by federal and state courts across the country. Mr. Lietz is also lead counsel on the following cases that are on the cutting edge of Article III federal court jurisdiction in data breach litigation— *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023); *Charlie v. Rehoboth McKinley Christian Healthcare Services*, Civ. No. 21-652 SCY/KK, 2022 WL 1078553 (D.N.M. April 11, 2022); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *1 (W.D. Mo. Sept. 15, 2021) and *McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228 (W.D.N.C. July 19, 2021). For his substantial efforts in advancing the state of the law in data breach and cyber-security litigation, in April 2022 Mr. Lietz was named to Law360's 2022 Cybersecurity & Privacy Editorial Board. This 12-person editorial board includes some of the most accomplished attorneys in the country in the cybersecurity and data breach legal field, and it is a high honor to be included on this board.

Mr. Lietz has been appointed as class counsel in other consumer class action cases and have tried consumer class action cases to verdict before a jury, most recently in *Baez v. LTD Financial Services*, Case No: 6:15–cv–1043–Orl–40TBS (MD Fla.). His experience with class

actions also includes a leadership role in a Massachusetts Walmart wage abuse class action, national HMO litigation, the Buspirone MDL, and Louisiana Norplant litigation. In addition to his class action experience, Mr. Lietz has substantial appellate experience, successfully briefing and arguing multiple cases before a number of federal appellate courts, including *Home Depot v. Jackson* at the U.S. Court of Appeals for the Fourth Circuit, and serving as part of the successful brief-writing and oral advocacy team for *Home Depot v. Jackson*, 139 S. Ct. 1743, 1744, 204 L. Ed. 2d 34 (2019) at the United States Supreme Court.

Prior to concentrating his practice on consumer class action litigation, for almost 20 years Mr. Lietz litigated critical injury and wrongful death actions arising from commercial incidents, such as tractor trailer incidents, industrial explosions, a subway collision, and commercial airplane crashes. He negotiated several million+ dollar settlements, served as lead counsel in multiple civil actions, tried a number of cases to verdict in both jury and bench trials, and argued cases before federal district and appeals courts, and numerous state courts. Mr. Lietz has lifetime verdicts and settlements in excess of $100 million, and consistently achieved settlements in the highest quartile of tort and mass tort cases. Mr. Lietz also holds an AV/Preeminent rating from Martindale-Hubbell, and has held that rating continuously since 1998..

In addition to his personal qualifications, Mr. Lietz brings the support and resources of Milberg to this case on behalf of the putative class. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and

16

settlements.[2] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[3] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."

The firm currently is involved in some of the largest and well-known class action cases in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than one hundred attorneys who work from offices across the United States and in Portugal, the United Kingdom, the Netherlands, and Germany. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.[4]

Simply put, Mr. Lietz and the attorneys at his law firm have substantial experience handling data security and data privacy cases like this one, including some of the largest data privacy litigation in the United States. *See, e.g., In re Blackbaud Data Privacy* MDL No. 2972 (D. S.C.) (where Milberg serves as interim class counsel in a data breach involving millions of consumers). Mr. Lietz and Milberg's resumes are attached hereto as Exhibit "2".

---

[2] *See, e.g., In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[3] See https://milberg.com/precedent-setting-decisions/page/3/.

[4] *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

### 3.    Proposed Interim Co-Lead Class Counsel are Familiar with the Applicable Law.

Mr. Federman and Mr. Lietz possess extensive knowledge of the applicable facts and law. Federman & Sherwood and Milberg were the first to investigate and understand the facts of this case, and have previously litigated, conducted significant discovery in (including depositions of information security officers, and technical and damages witnesses and experts), and briefed essentially every aspect of data breach class action cases. Federman & Sherwood recently had a contested Order granting class certification in a data breach sustained on appeal to the 11th Cir. *Green-Cooper v. Brinker International, Inc.*, -- F.4th --, 2023 WL 4446420 (11th Cir., July 11, 2023). The experience of proposed Interim Class Counsel, in this case and in similar cases in general, will allow them to efficiently manage pivotal issues including class member identification and damages.

### 4.    Proposed Interim Co-Lead Class Counsel are Committed to Representing and Advancing the Interests of the Class.

Mr. Federman, Mr. Lietz, and their respective firms are willing and able to expend the resources necessary to ensure the vigorous prosecution of the claims asserted by the Plaintiffs in these cases. Mr. Federman, Mr. Lietz, and their respective firms have a proven track-record of success leading and litigating complex class action cases, including data privacy matters. For example, Federman & Sherwood and Milberg recently concluded a data breach case pending in the District of Utah: *In re Medical Review Institute of America, LLC, Data Breach Litigation*, Civil No. 22:22-cv-00082-DAK. This action involved a data breach of the Medical Review Institute of America's system, which resulted in at least 130,000 Class Members' demographic information, Social Security numbers, clinical information, health insurance, financial information, and other

protected health information being compromised. On August 24, 2023, Judge Dale A. Kimball finally approved a settlement in this matter that resolved the cited case. Judge Kimball's judgment for settlement was the most efficient means possible for the Class Members.

The experience here will be no different. Mr. Federman and Mr. Lietz understand the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the class members. In fact, Mr. Federman and Mr. Lietz have already demonstrated their commitment to this litigation by devoting substantial but appropriate resources to this litigation.

### 5. Proposed Interim Liaison Counsel is Prepared and Qualified to Represent the Class.

Proposed interim liaison counsel is qualified for the position. Ms. Kassan has successfully worked with Federman & Sherwood on data breaches cases in the past. The Milberg firm is well versed in litigation matters and familiar with Pennsylvania's local rules. Ms. Kassan and her firm are willing and able to devote the necessary time and effort, and have already devoted such necessary time and effort, to successfully represent the class in this matter. As such, Plaintiffs respectfully request that the Court appoint Ms. Kassan as interim liaison counsel. For further information about Ms. Kassan and the Milberg firm, please refer to the Milberg Firm Resume, attached hereto as **Exhibit 2**.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court grant their motion and enter an order: (1) consolidating the Related Actions; and (2) appointing William B. Federman and David K. Leitz as interim lead class counsel and Randi Kassan as interim liaison counsel. A proposed order granting this relief is submitted herewith.

Dated: October 5, 2023

/s/ Randi Kassan
Randi Kassan
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Phone: (212) 594-5300
rkassan@milberg.com

*Attorney for Plaintiff Bravener*

**FEDERMAN & SHERWOOD**
William B. Federman*
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
F: (405) 239-2112
wbf@federmanlaw.com
*Pro hac vice application forthcoming*

*Attorney for Plaintiff Ross and
the Proposed Class*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 5, 2023 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.


*/s/ Randi Kassan*
Randi Kassan